# City of Chester et al., Appts., *v.* New Chester Water Company.

When a corporation claims a monopoly it must clearly show that either the law or its charter confers upon it the exclusive privilege.

The fact that competition, which will diminish the profits of an established business, is threatened is not recognized as ground for interference by a court of equity.

NOTE.—By clause 7 of § 34 of the act of April 29, 1874, gas and water companies are forbidden to construct their works in municipalities without lawful corporate consent, when such have been constructed by such municipality. This power to construct could be exercised either by the munici-

A municipal corporation which has a contract with a water company for the supply of water for fire purposes, with an option, not yet exercised, to buy the company's works, cannot claim the exclusive rights given by § 34 of the act of April 29, 1874, to municipalities which have constructed water works.

The consent of the municipality is, therefore, not prerequisite to the introduction of the pipes of a rival company within its limits.

(Argued February 11, 1887.   Decided February 21, 1887.)

January Term, 1886, No. 328, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.    Appeal from a decree of the Common Pleas of Delaware County refusing a preliminary injunction.   Affirmed.

The allegations of the bill, filed November 7, 1885, were substantially these:

The South Ward Water Works is a corporation created by the acts of April 11, 1866, and March 2, 1867, for the purpose of supplying the city of Chester and its vicinity with water. In pursuance of law and the ordinances of the council of the city, the company has heretofore expended large sums of money in the purchase of real estate and the erection of its works, and has for a period of eighteen years been continuously supplying the city and its citizens with water for manufacturing, domestic, and other uses.

The city is the owner of numerous fire plugs and fountains which are connected with the pipes of the company, and through which the company has been for eighteen years past, and still is, supplying the said city with water, in pursuance of a contract made between the parties at the time of the construction of the company's works, and still in force.   Under this contract an appropriation was made by council for the payment of water rents to the first Monday of April, 1886, covering the time within which the company defendant was incorporated and took steps to establish itself within the limits of the city of Chester.

pality itself, or through the agency of one with whom it contracted, with like effect.   White v. Meadville, 177 Pa. 643, 34 L. R. A. 567, 35 Atl. 693; Metzger v. Beaver Falls, 178 Pa. 1, 35 Atl. 1134.    In such case the municipality could not subsequently construct its own works directly (Tyrone Gas & Water Co. v. Tyrone, 195 Pa. 566, 46 Atl. 134) ; or indirectly (Welsh v. Beaver Falls, 186 Pa. 578, 40 Atl. 784; Carlisle Gas & Water Co. v. Carlisle Water Co. 182 Pa. 17, 37 Atl. 821).   As to exclusiveness of franchise to furnish municipal water supply, see Farnham, Waters, p. 760.

For about thirteen years after the incorporation of the South Ward Company its income was insufficient to pay the expenses of operating and maintaining it, and its limit of bonded indebtedness was reached; but during the five years last past the receipts have been considerably in excess of the expenditures, and have been and are being almost entirely devoted to the improvement and enlargement of the works. The bonded debt of the corporation is secured, as provided by act of assembly, by bonds signed by the mayor of the city of Chester and the president and clerk of council thereof, with the seal of said city attached, and are made a lien by law upon all the property of the south ward of the said city.

The city of Chester has a vested legal right to purchase and control the company's works at the expiration of twenty years after its incorporation, which time was less than two years distant at the time of the filing of tl.e bill. The city had been before, and was at the time of the filing of this bill, in negotiation with the company for the purchase or lease of said works. A committee of the council of said city had recommended a lease for ninety-nine years or longer, and the city solicitor had been directed by said council to take all necessary steps to protect the interests of the city as against the New Chester Water Company, defendant.

The New Chester Water Company, defendant, was incorporated in 1885, under the act of April 29, 1874, with a capital stock of $20,000, for the purpose of supplying the citizens of Chester and vicinity with water, and at the time of the filing of this bill was about to commence operations within said city by digging trenches and making excavations in the streets of said city for the purpose of laying its pipes. Such an act, without the consent of the city authorities, would be an invasion, not only of the rights and franchises of the South Ward Water Company, but also of the rights of the city of Chester and the citizens thereof, detrimental to the public interests, contrary to equity and good conscience, and to the manifest wrong and injury of the complainants.

Upon refusing a preliminary injunction, CLAYTON, P. J., delivered the following opinion:

The bill does not allege that the south ward is a municipality already possessed of water works of its own construction, and

now furnishing water to its citizens. If it were such a municipality, the act of 1874 would confer upon it the exclusive right to supply water to its citizens. Neither do the plaintiffs claim that the charter of the South Ward Water Works gives it an exclusive right in any designated territory. Its only claim to prevent competition from the new company is the alleged hardship of permitting another company to take away its business and cripple its resources, after it has struggled so long with adversity and spent so much money in a heretofore profitless enterprise. The defendant meets the charges in the bill by the production of a regularly granted charter from the commonwealth, authorizing it to do the very things complained of.

The intended application for a charter, setting forth its purposes, was fully advertised in the manner provided by law.

It was admitted on the argument that no opposition had been made to the granting of the charter.

The city of Chester has not exercised its option to purchase the South Ward Water Works. If it had done so before the new charter was granted, it would have some standing in a court of equity as a party to this bill. If it had given notice to the new company of its intention to do so, either actually or by filing objections with the authorities at Harrisburgh, it would now be in condition to oppose the entrance of the new company into Chester. It has done neither. Its only interest in the South Ward Water Works is the contract with it from year to year for water for fires and sanitary purposes, for which it pays full compensation. It has no contract binding the company longer than next April. After that date the city cannot compel the company to furnish it with water, nor can the company require the city to take it.

The fact that the bonds of the water company are executed by the city and bear its seal does not help the case, as a cursory examination of the act of assembly authorizing the bonds will show that the city only executed them as the agent of the water company. The act clearly provides that the city shall not be liable for them, but that they shall be a lien only on the property of the south ward, and be paid by the owners of property in that ward.

That the South Ward Water Works may be injured by the competition of a rival corporation is most probable; but that such competition is unlawful is quite another question. It is

quite likely that the Pennsylvania Railroad Company will suffer from the competition of its recently chartered rival through Chester. It is also possible that the old established banks of Chester will lose some of their business by the introduction of a new one under state authority. The injury suffered by rivalry in business must be settled by the laws of trade, not by the courts of law and equity.

When a corporation claims a monopoly it must clearly show that either the law or its charter confers the exclusive privilege upon it. There were no exclusive privileges granted by general law before 1874. The charter of the South Ward Water Works does not give it. If it possesses the privilege, it must be under some construction of the act of 1874. As before stated, if it should be held that the South Ward Water Works is a municipality, within the intent of the 6th clause of § 34 of the act of 1874, then, by virtue of that act, the new company cannot enter the limits of the municipality without its consent.

This, however, would not keep the new company out of the city of Chester, so far as the other wards are concerned. Under the most favorable view of the case, it must be admitted by all that such a construction of the act by the supreme court is doubtful, especially so, as it has already decided that it is not a municipality so far as the taxation of its property is concerned. Chadwick v. Maginnes, 94 Pa. 117.

It will also be admitted that an injunction never issues in a doubtful case. The injunction is, therefore, refused.

The assignments of error specified the refusal of the preliminary injunction, and the ruling of the court "that the city of Chester had not constructed water works within the spirit of the act of April 29, 1874."

*D. M. Johnson, John B. Hannum,* and *Orlando Harvey,* for appellants.—Section 16 of the act of March 11, 1857 (P. L. 82), which says: "It shall and may be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city, or district into which the said company shall be located to become the owners of said works and property of said company by paying therefor the net cost of erecting and maintaining the same, with interest thereon at the rate of 10 per cent per annum,"—gives the city a vested right over which the com-

pany has no control. But the city cannot exercise this power until 1887.

A new company, on the threshold of the fruition of this right, should not be permitted to step in and impair it without the consent of the city.

At the time this prayer for an injunction was refused there was clearly a subsisting contract between the city and the water works. The new company cannot impeach the validity of this contract.

This contract brings the parties within the spirit of the act of April 29, 1874 (P. L. 95), § 34, proviso to clause 7, which provides that no company, incorporated under the act, shall construct gas or water works within any municipality, without the consent of the corporate authorities, in cases where gas and water works shall have been constructed by the municipality. Bradford Water Works Cases, Meredith & Tate's Corp. 132.

Inasmuch as the charter granted the new company under the act of 1874 is but a right, contingent upon the exercise of such right, it must be exercised within two years. Act of April 17, 1876 (P. L. 37) § 11; act of June 13, 1883 (P. L. 123) § 5.

For the purpose of furnishing water and gas, competition is not beneficial to the community, being ruinous to the companies engaged in such competition and, as a result, highly injurious to the people at large for whose benefit and in whose interest these institutions are created, and for whose interest they should be conducted.

*William Ward,* for appellee.—The only question to be solved is whether at the time of filing the bill the municipal authorities of Chester were supplying that city with water. It is admitted that the only concern engaged in this work was the South Ward Water Board. But that body is not a municipal corporation, and its profits inure especially to the benefit of the citizens of the south ward, and its taxpayers are practically the equitable owners of the works. Chadwick v. Maginnes, 94 Pa. 117.

To enable the city to exercise its prohibitory power against the new company, it must be in the position of supplying its citizens with water; but it is not furnishing water to a single citizen, except in so far as cleaning the gutters and extinguishing fires may be construed to be furnishing the citizens; and in these

two respects, through the instrumentality of the South Ward Board, depending upon annual contract and appropriation.

PER CURIAM:

The reasons stated in the opinion of the learned judge justify the refusal of this preliminary injunction.

Decree affirmed and appeal dismissed, at the costs of the appellants.